## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARMEN JARA, ) | |
| ) | |
| ) | |
| Plaintiff, ) | C.A. No. |
| ) | |
| v. ) | |
| ) | |
| DELAWARE TRANSIT CORPORATION; ) | |
| DELAWARE AUTHORITY FOR ) | |
| REGIONAL TRANSIT; and ) | |
| FIRST TRANSIT, INC. ) | JURY TRIAL DEMANDED |
| ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

## INTRODUCTION

1. Plaintiff, Carmen Jara, files this action against Defendants Delaware Transit Corporation, Delaware Authority for Regional Transit and First Transit Inc., for violations of Title VII of the Civil Rights Act of 1964, the Delaware Whistleblowers' Protection Act, the National Transit Systems Security Act, the Surface Transportation Assistance Act, Breach of the Implied Covenant of Good Faith and Fair Dealing and violations of the Fourteenth Amendment.

## JURISDICTION

2. This Court has federal question jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff Carmen Jara, ("Plaintiff") is a resident of Sussex County Delaware.

6. Defendant Delaware Transit Corporation ("DTC"), is a Delaware Corporation operating a public transit business in the State of Delaware. Upon information and belief, Defendant Delaware Transit Corporation manages and operates Defendant Delaware Administration for Regional Transit. DTC's registered agent is located at 800 Bay Road Dover, DE 19903.

7. Defendant Delaware Authority for Regional Transit, also known as DART ("DART"), is a corporation of the State of Delaware. Its registered agent for service of process is the Delaware Administration for Regional Transit, located at One South Monroe Street, Wilmington, Delaware 19801.

8. Defendant First Transit, Inc. ("First Transit") is a Delaware corporation, that has a place of business at 545 S Bedford St, Georgetown, DE 19947. First Transit's registered agent is located at 1209 Orange Street, Wilmington, Delaware 19801.

9. At all relevant times, Defendants DTC, DART and First Transit have continuously been joint employers engaged in an industry affecting commerce within the meaning of Section of Title VII of the Civil Rights Act of 1964 as well as under the laws and statutes enforced by the Occupational Health and Safety Act including the National Transit Systems Security Act and the Surface Transportation Assistance Act.

## ADMINISTRATIVE PROCESS

10. On April 6, 2020, Ms. Jara filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants DTC, DART and First Transit.

11. On August 6, 2020, the EEOC issued Ms. Jara a Right to Sue Notice for her Charge of Discrimination against Defendants DTC and DART. (Exhibit A).

12. On September 16, 2020, the EEOC issued Ms. Jara her Right to Sue Notice for her Charge of Discrimination against Defendant First Transit. (Exhibit A).

13. Ms. Jara has filed this action under the Title VII Civil Rights Act of 1964 within ninety (90) days after receipt of her Right to Sue Notices from the EEOC.

14. On February 14, 2020, Plaintiff filed a whistleblower complaint under the Occupational Health and Safety Act against Defendants DTC, DART and First Transit.

15. OSHA has not issued a final decision within 210 of the filing of Ms. Jara's complaint.

16. Ms. Jara has satisfied all statutory prerequisites for filing this action.

## FACTUAL ALLEGATIONS

**Plaintiff's Employment with DTC, DART and First Transit**

17. DTC operates Delaware Authority for Regional Transit ("DART"). The Delaware General Assembly created DTC to manage and operate DART along with the Delaware Administration for Specialized Transportation, Delaware Railroad Administration, and Commuter Services Administration.

18. At all times relevant to this Complaint, DTC and DART contracted with First Transit to service bus routes in the State of Delaware.

19. In February of 2019, Ms. Jara was hired by First Transit as a full-time transportation bus driver and assigned to operate bus routes in Sussex County, Delaware.

20. DTC, DART and First Transit each exercised control over Ms. Jara's employment as a transportation bus driver.

21. DTC, DART and First Transit each have the authority to hire and/or fire its employees, including Ms. Jara.

22. DTC, DART and First Transit each have the authority and did in fact promulgate work rules, regulations, and assignments governing the conditions and supervision of Ms. Jara's employment.

23. DTC, DART and First Transit were involved in the day to day employee supervision of Ms. Jara.

24. DTC, DART and First Transit controls Ms. Jara's employee records, payroll, insurance, taxes and the like.

**Ms. Jara is Subjected to Gender Discrimination at the Outset of her Employment**

25. In February of 2019, Ms. Jara was hired as a full-time bus transportation driver.

26. On April 15, 2019, Ms. Jara began training for her position.

27. Ms. Jara, a female, trained alongside two male hires, Richard Simon and Jay Bishop. Mr. Simon and Mr. Bishop were also hired as full-time transportation bus drivers.

28. Ms. Jara successfully completed her training period and program and was placed in a part-time position without any benefits.

29. After Mr. Simon and Mr. Bishop completed the training program, Mr. Gregory Clark, First Transit Manager, placed them into a full-time position with benefits.

30. Ms. Jara reported to Mr. Clark that she did not receive her entitled benefits package while Mr. Simon and Mr. Bishop did. Mr. Clark advised Ms. Jara he no longer had a full-time position available for her.

31. From February of 2019 to October of 2019, Ms. Jara worked in a part time position without benefits.

32. In October of 2019, Ms. Jara was placed into a full-time position. Ms. Jara was told she could not receive her entitled benefits until January 1, 2020.

**Ms. Jara is Sexually Harassed by her Supervisor**

33. Beginning in May of 2019, Ms. Jara began to be sexually harassed by one of her supervisors, Mr. Johnnie Brown.

34. Mr. Brown contacted Ms. Jara on her personal cell phone and tried to initiate conversations of a personal nature.

35. Mr. Brown sent Ms. Jara unsolicited sexual messages on her personal cell phone.

36. In or around May, 2019, Mr. Brown insisted on walking Ms. Jara to her car. Mr. Brown then kissed Ms. Jara.

37. Mr. Brown's kiss was unsolicited and unwelcomed.

38. Ms. Jara informed Mr. Brown she was not interested in him.

39. Mr. Brown continued to make sexually inappropriate comments about Ms. Jara's appearance, stating to her on multiple occasions, "You look and smell good."

40. Mr. Brown approached Ms. Jara on her bus and told her he was getting a divorce and wanted to go out with her. Ms. Jara rejected Mr. Brown he said "Okay we will take it slow" and continued to pursue Ms. Jara.

41. On June 18, 2019, the sexual harassment continued when Mr. Brown sent Ms. Jara a picture of his genitals and made multiple attempts to call Ms. Jara on her personal phone.

42. Ms. Jara reported Mr. Brown's sexually explicit behavior to Mr. Clark. Mr. Clark failed to appropriately respond to Ms. Jara's reports of sexual harassment.

43. Ms. Jara was retaliated against for reporting the sexual harassment she endured.

44. Ms. Arnetta Shockley, another First Transit supervisor of Ms. Jara's, unilaterally changed Ms. Jara's shift without notifying her which resulted in loss of pay.

45. On or around July 18, 2019, while operating her bus, Ms. Jara noticed the airbags in her bus were broken, which caused the bus to the lean to the side while she was operating it. Maintenance advised Ms. Jara to stop driving the bus. Mr. Brown told Ms. Jara he knew of the broken airbags, "it would be fine" and to continue operating to bus despite the blatant safety hazard.

**Ms. Jara is Subjected to an Unsafe and Hostile Work Environment Due to a Male Passenger**

46. In December of 2019, Ms. Jara began to be harassed and stalked by a male bus passenger.

47. On December 12, 2019, during Ms. Jara's bus route, the male passenger boarded her bus. The male passenger yelled "How would it feel to get your skull crushed?" "How would you like to have your body in a wood chipper?" "How would it feel to be skinned like a deer?"

48. Ms. Jara was incredibly disturbed and fearful for not only her life, but for the safety of her other passengers due to the male passenger's disturbing and violent comments.

49. Ms. Jara immediately hit the panic button on her bus, which automatically recorded and sent audio and video recordings of the inside of the bus to Mr. Clark at First Transit as well as DTC's and DART's control office.

50. The Georgetown, Delaware police were contacted to assist Ms. Jara. When the police arrived at the scene, they removed the passenger from the bus and took him away in their police car.

51. Ms. Jara completed an incident report for the December 12, 2019, incident which was sent to both First Transit, DTC and DART.  First Transit, DTC and DART failed to take any action to prevent the male passenger from engaging in the harassing and dangerous behavior.

52. On January 9, 2020, Ms. Jara was driving bus route when the same male passenger once again boarded her bus.

53. The male passenger rode Ms. Jara's bus the entire route. When Ms. Jara reached the last stop, the male passenger, now the only passenger left, remained on the bus. The male passenger only left when another passenger boarded the bus for Ms. Jara's next route.

54. When Ms. Jara finished her next route around 10:00p.m., Ms. Jara saw the male passenger again waiting to board her bus.

55. Ms. Jara completed another incident report for the January 9, 2020, incident which was sent to both DTC, DART and First Transit.

56. DTC, DART and First Transit failed to take any action.

57. On January 11, 2020, Ms. Jara was driving her bus route when she saw the male passenger again waiting for her bus. As no one else was on her bus or waiting at the bus stop, and fearful for her safety, Ms. Jara passed this male passenger by. As she passed him by, the male passenger grinned at her in a creepy and disturbing manner.

58. Ms. Jara again reported the male passenger's actions to First Transit and DTC's/DART's control center.

59. DTC and DART instructed Ms. Jara to continue to pass the male passenger and Ms. Jara was also told if she saw the male passenger again, she was instructed to stop the bus, keep the doors closed, and wait for a supervisor.

60. When Ms. Jara returned to that same bus stop three hours later on January 11, 2020, the male passenger was still waiting to board her bus. Ms. Jara did as she was instructed, locked her doors and waited for a supervisor. As she waited, the male passenger walked up to Ms. Jara's door and began dancing in a sexual manner in front of her.

61. The male passenger then approached another bus operators' bus. When the bus operator asked the male passenger where he was going, he pointed to Ms. Jara and stated "I want her" and thereafter attempted to get onto Ms. Jara's locked bus.

62. Ms. Jara then contacted a First Transit supervisor for further assistance. First Transit stated it would send a supervisor to assist her, but a supervisor never showed up.

63. At all times when Ms. Jara was desperately contacting First Transit, DTC and DART for help as she was trapped in her bus, the male bus passenger sat nearby and stared at Ms. Jara on her bus.

64. On January 12, 2020, Ms. Jara again reported to Mr. Randall Byers, First Transit Operations Manager, and Mr. Clark the incident that occurred the previous night with the male passenger on January 11, 2020.

65. Mr. Byers told Ms. Jara the male passenger was infatuated with her and she needed to be careful.

66. On January 15, 2020, Ms. Jara was driving her bus route when the male passenger yet again attempted to board her bus.

67. Fearful for her own safety and the safety of her passengers, Ms. Jara called DTC/DART control on a hand-held radio and was advised they would send a supervisor. Ms. Jara also contacted the Delaware State Police and filled out an incident report.

68. Upon arrival of supervisor, Ms. Jara was told she needed to continue driving the bus or "DTC would not like that."

69. In or around January 16, 2020, Ms. Jara asked Mr. Clark if she could be transferred to another route so she would not be subjected to the male passenger's harassing and dangerous behavior. Her request was denied.

**Plaintiff's Termination**

70. On January 17, 2020, Mr. Byers called Ms. Jara into a meeting with Mr. Clark and informed her she was terminated.

71. Plaintiff was told she was being terminated for calling into the control center and for contacting the Delaware State Police regarding the male bus passenger.

72. Mr. Clark told Ms. Jara that DTC, through Lindsay Kelly, Contractor Coordinator of DTC, recommended terminating Ms. Jara's employment.

73. Mr. Clark then contacted Ms. Kelly and asked her why DTC recommended terminating Ms. Jara. Ms. Kelly stated DTC wanted Ms. Jara terminated because of all of the calls she made to DTC controls and for filing a police report with the Delaware State Police concerning the male bus passenger who was harassing her.

**CLAIMS AND DAMAGES**
Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

**COUNT I**
**Discrimination Based on Sex in Violation of the Title VII of the Civil Rights Act 1964 (42 U.S.C. §§ 2000e et al. as Amended)**
**Against All Defendants**

74. The allegations of Paragraphs 1 through 73 are incorporated by reference as if fully restated herein.

75. Defendants First Transit, DTC and DART each employ fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 2000e(b).

76. At all times relevant hereto, Plaintiff was employed by Defendants and was an "Employee" as defined by 42 U.S.C. § 2000e(f).

77. Ms. Jara received her Right to Sue letters from the EEOC on August 06, 2020 and September 16, 2020. (Exhibit A). Plaintiff has satisfied all statutory prerequisites for filing this action.

78. Defendants DTC, DART and First Transit exercised sufficient control over the terms and conditions of Ms. Jara's employment and are therefore joint employers for purposes of liability under Title VII.

79. Ms. Jara, a female, is a member of a protected class.

80. Ms. Jara was qualified for the position of Full-Time Transportation Driver.

81. Ms. Jara, Mr. Bishop and Mr. Simon were hired by Defendants as full-time transportation drivers. Ms. Jara, Mr. Bishop and Mr. Simon all successfully completed the training program from transportation drivers.

82. Ms. Jara suffered an adverse employment action when Defendants placed her into a part time position without any benefits, with less pay and less hours, while allowing Mr. Bishop and Mr. Simon to be placed into full time positions with benefits, more pay and more hours.

83. Ms. Jara was treated differently by Defendants based upon her gender.

84. Defendants discrimination against Plaintiff on the basis of her gender constitutes an unlawful employment practice in violation of Title VII.

85. Defendants continued to subject Ms. Jara to disparate treatment based upon her gender by subjecting her to a sexually hostile work environment and refusing to adequately investigate her claims of sexual harassment and discrimination.

86. Ms. Jara was subjected to unwelcome sexual advances and other verbal or physical conduct of a sexual nature sufficient to constitute sexual harassment throughout her employment with Defendants.

87. The aforementioned conduct was perpetuated by Ms. Jara's supervisor Mr. Brown as well as the male bus passenger.

88. Under the EEOC Guidelines, an employer is liable for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

89. Defendants did not try to prevent the discriminatory and harassing behavior when Plaintiff reported it to them.

90. Defendants acquiesced in the discriminatory and harassing conduct by creating and allowing to exist a hostile, intolerable, offensive and abusive workplace that a reasonable person would consider intimidating, hostile, or abusive.

91. Ms. Jara suffered damages as a result of Defendants unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, physical pain, compensatory damages and the costs of bringing this action.

**COUNT II**
**Violation of Delaware Whistleblowers' Protection Act**
**19 *Del. C.* §1703**
**Against all Defendants**

92. The allegations of paragraphs 1 through 91 are incorporated herein as though fully set forth below.

93. Defendants are an employer within the meaning of 19 *Del. C.* §1702.

94. Ms. Jara is an employee within the meaning of 19 *Del. C.* §1702.

95. Ms. Jara engaged in protected activity when she reported to Defendants a male bus passenger's violent and harassing behavior.

96. Ms. Jara reported a violation as defined in the Delaware Whistleblower Act, when she reported the male bus passenger's violent and harassing behavior to multiple members of management of Defendants.

97. Ms. Jara reported acts of workplace violence, harassment, and unsafe bus conditions which are laws and regulations promulgated to protect employees from health and safety hazards.

98. Ms. Jara reported violations as set forth in Defendants own rules, policies and regulations regarding harassment, workplace violence and whistleblower protections.

99. Ms. Jara reported violations promulgated to protect employees from health and safety hazards as provided for under the National Transit Systems Security Act and the Surface Transportation Assistance Act.

100. Defendants were aware of the male passenger's violence and harassing behavior and failed to take corrective or protective action.

101. Defendants discharged Ms. Jara on January 17, 2020, because she reported to Defendants a violation as defined by the Delaware Whistleblower Protections Act.

102. There is a causal connection between Ms. Jara's reports of the male bus passenger, the broken airbags on her bus, and the adverse action of termination based upon the temporal proximity of Ms. Jara's reports.

103. Defendants terminated Ms. Jara in violation of the Delaware Whistleblower Protection Act.

104. Ms. Jara has been injured by Defendants' violation of the Delaware Whistleblower Protection Act, and as a result suffered from economic loss, emotional distress, and humiliation.

105. Ms. Jara is entitled to damages for back pay, front pay, benefits, consequential damages, and compensatory damages.

106. Ms. Jara is entitled to punitive damages regarding Defendants' conduct, to prevent future violations.

## COUNT III
### Violation of 42 U.S.C. §1983 –
### Sexual Harassment and Hostile Work Environment
### Against DTC and DART

107. The allegations of paragraphs 1 through 106 are incorporated herein as though fully set forth below.

108. Defendants' discriminatory conduct, as set forth herein, deprived Plaintiff of equal protection under the law as guaranteed by the Fourteenth Amendment.

109. The incidents of sexual harassment as described in the above paragraphs had the effect of substantially interfering with Ms. Jara's work performance by creating a hostile, intimidating and offensive working environment amounting to unlawful sex discrimination in violation of Ms. Jara's right under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

110. Defendants, having actual or constructive knowledge of the sexual harassment endured by Ms. Jara, acted with deliberate indifference to Ms. Jara's rights, in failing to intervene to stop the unlawful conduct, and in failing to remedy the harassing conduct after it learned about it.

111. Defendants maintained a policy, custom and practice of intentional sex discrimination as well as a policy of condoning and promoting a sexually hostile work environment and refusal to adequately investigate claims of sexual harassment. Defendants custom and practice has deprived Ms. Jara of her rights protected by Title VII and the Fourteenth Amendment.

112. Defendants violation of the United States Constitution included policies, practices, and/or customs, to treat female employees less favorably than male employees and to promote a policy of sex discrimination, which was committed, directed, implemented and/or ratified by officials of Defendants in supervisory capacities with policymaking and decision-making authority.

### COUNT IV
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### Against All Defendants

113. The allegations of paragraphs 1 through 112 are incorporated herein as though fully set forth below.

114. Every contract, whether oral or written, express or implied, has a covenant to the effect that neither party to the contract will do anything in bad faith to prevent the other party to the contract from enjoying the benefits of the contract.

115. The implied covenant of good faith and fair dealing prohibits employers from terminating, disciplining or taking action against employees in violation of public policy.

116. Defendants breached the covenant of good faith and fair dealing to Ms. Jara by retaliating against her and terminating her for reporting sexual harassment, unsafe working conditions and workplace violence, in violation of public policy.

117. As a result of Defendants' breach of the covenant of good faith and fair dealing, Ms. Jara suffered and continues to suffer loss of income, loss of other employment benefits, distress, humiliation, conscious pain, suffering, embarrassment, other emotional harm and damage to her reputation, both personal and professional.

### COUNT V
### Retaliation in Violation of the
### National Transit Systems Security Act- 6 U.S.C. § 1142
### Against All Defendants

118. The allegations of paragraphs 1 through 117 are incorporated herein as though fully set forth below.

119. On February 14, 2020, Ms. Jara filed an Occupational Safety and Health Administration ("OSHA") whistleblower complaint.

120. OSHA has not issued a final decision within 210 days of the filing of Ms. Jara's complaint, and the delay is not due to any parties' bad faith, Ms. Jara is now bringing this action.

121. OSHA is responsible for, *inter alia*, enforcing the whistleblower provisions of the National Transit Systems Security Act ("NTSSA") 6 U.S.C. 1142.

122. The NTSSA states: "A public transportation agency, or a contractor or a subcontractor of such agency, or an officer or employee of such agency, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for… reporting a hazardous safety or security condition or for refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties."

123. The NTSSA prohibits retaliation against an employee who reports what she reasonably believes is "a violation of any Federal law, rule, or regulation relating to public transportation safety or security or who files a complaint related to the enforcement of the NTSSA."

124. Ms. Jara engaged in protected activity when she reported the violent male bus passenger as well as the broken airbags on her bus, which both created a hazardous safety and security conditions.

125. Defendants knew Ms. Jara engaged in protected activity as she reported the hazardous safety and security conditions multiple times during her employment.

126. Ms. Jara was terminated on January 17, 2020, in direct retaliation for engaging in protected activity as evidenced by the temporal proximity of her reports as well as the fact Defendants told Ms. Jara she was terminated for reporting the violence male passenger's unsafe behavior.

127. As a result of Defendants' retaliatory discrimination, Ms. Jara has suffered and is continuing to suffer the injuries and damages set forth above.

**COUNT VI**
**Violations of the Surface Transportation Assistance Act of 1982**
**49 U.S.C. § 31105**
**Against All Defendants**

128. The allegations of paragraphs 1 through 127 are incorporated as if fully referenced herein.

129. Defendants DTC, DART and First Transit are employers with the meaning of the Surface Transportation Assistance Act ("STAA") of 1982 49 U.S.C. § 31101(3), engaged in a business affecting commerce, owning or leasing commercial motor vehicles, and/or assigned employees to operate the vehicle in commerce.

130. Ms. Jara was an employee within the meaning of STAA 49 U.S.C. § 31101(2), working as a driver of a commercial motor vehicle designed to transport more than 10 passengers who directly affected commercial vehicle safety in the course of her employment with Defendants.

131. Under the STAA, an employer may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment because the employee has filed a complaint related to a violation of a commercial motor vehicle safety or security regulation, standard or order.

132. Ms. Jara engaged in protected activity under the STAA when she reported on multiple occasions the dangerous male bus passenger who frequently rode her bus as well as when she reported the broken airbags in her bus, both instances which resulted in violations of commercial motor vehicle safety security, regulations, standards or orders.

133. Defendants violated the STAA by terminating Ms. Jara because she engaged in activity protected by the STAA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

A. Declare the conduct by Defendants to be in violation of Plaintiff's statutory rights and common law rights.

B. Awarding Plaintiff any and all consequential damages, including, but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgment interest, equity, liquidated damages, punitive damages and any or all pecuniary damages.

C. Awarding Plaintiff all compensation due as a result of Defendants' violations herein.

D. Awarding Plaintiff an equal and additional amount as liquidated damages.

E. Awarding Plaintiff costs and reasonable attorney's fees.

F. Awarding Plaintiff pre and post judgment interest at the legal rate.

G. Any and all such other relief as the Court deems appropriate under the circumstances.

        **ALLEN & ASSOCIATES**
        */s/ Michele D. Allen*
        Michele D. Allen (#4359)
        Emily A. Biffen (#6639)
        4250 Lancaster Pike Suite 230
        Wilmington, DE 19805
        302-234-8600
        302-234-8602 (fax)
        michele@allenlaborlaw.com
        emily@allenlaborlaw.com
        *Attorneys for Plaintiff*

Dated: November 4, 2020